## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No.  2:24-cv-00461-JLB-NPM

**LARRY BURGESS**,

     Plaintiff,

v.

**EXPERIAN INFORMATION SOLUTIONS INC**,
**EQUIFAX INFORMATION SERVICES LLC**,
**TRANS UNION LLC**,
and **ABILITY RECOVERY SERVICES LLC**,

     Defendants.

_____/

### FIRST AMENDED COMPLAINT

Plaintiff Larry Burgess ("Plaintiff") sues Defendant Experian Information Solutions Inc, Defendant Equifax Information Services LLC, Defendant Trans Union LLC, and Ability Recovery Services LLC, (collectively, the "Defendants") for violations of the Fair Credit Reporting Act ("FCRA").

### JURISDICTION AND VENUE

1.    Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2.    Venue in this District is proper because Plaintiff resides here, Defendants transacts business here, and the complained conduct of Defendants occurred here.

## PARTIES

3.      Plaintiff is a natural person, and a citizen of the State of Florida, residing in Lee County, Florida.

4.      Defendant Experian Information Solutions Inc ("Experian" or "Defendant-EX") is an Ohio corporation with its principal place of business located in Costa Mesa, California.

5.      Defendant Equifax Information Services LLC ("Equifax" or "Defendant-EQ") is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia.

6.      Defendant Trans Union LLC ("TransUnion" or "Defendant-TU") is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

7.      Defendant Ability Recovery Services LLC ("ARS") is a/an Pennsylvania limited liability company with its principal place of business located in Dupont, Pennsylvania.

## DEMAND FOR JURY TRIAL

8.      Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS
### *Summary of the FCRA*

9.      The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

10.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See, 15 U.S.C.§1681 (a)(4).

11.     Specifically, the FCRA was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. See, §1681(b).

12.     Congress also recognized that CRAs "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." §1681 (a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." §1681 (a)(4).

13.     To that end, the FCRA imposes the following twin duties on CRAs: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (§1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (§1681i).

14.     Similarly, the FCRA also imposes a duty upon the Furnishers to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. §1681s-2(b).

15.     On a date better known by Defendants, Defendants began reporting inaccurate, erroneous and misleading debts allegedly owed by Plaintiff to the national credit reporting agencies.

16.     Among the accounts reported was an ARS account opened on 01-05-2023, an Applied Business Service, Inc account opened on 03-01-2022, and a Credit Collection account account opened on 06-20-2022 (the "Subject Accounts").

17.     The Subject Accounts, as reported on Plaintiff's credit reports, are erroneous, incomplete, misleading, factually inaccurate, incorrect and, as such, require correction. In particular, among other issues, the ARS account is erroneous because this account does not belong to Plaintiff, Plaintiff never opened an account with ARS and Plaintiff is incorrectly named as the debtor of this account.  As such,

as explained in more detail below and in order to achieve the necessary correction, Plaintiff disputed the Subject Accounts with the national credit bureaus.

18.    The Subject Accounts, as reported on Plaintiff's credit reports, are erroneous, incomplete, misleading, inaccurate, and, as such, require correction. As such, to achieve the necessary correction, Plaintiff disputed the Subject Accounts with the national credit bureaus.

### *Factual Allegations*

19.    On January 26, 2019, Plaintiff suffered an accident and related injuries in the course and scope of Plaintiff's employment that required medical treatment and/or services (the "Work-Injury").

20.    On January 26, 2019, Central Emergency Medical ("Care Provider") provided Plaintiff with a portion of the required medical services needed to treat the Work-Injury, whereby the only medical services provided to Plaintiff by Care Provider were for the treatment of the Work-Injury.

21.    At the time Care Provider provided its respective medical services to Plaintiff, Plaintiff informed Care Provider that the sought treatment was for the Work-Injury.

22.    Care Provider charged a fee for the provision of its (Care Provider's) respective medical services for treatment of the Work-Injury (the "Consumer Debt").

23.     The Consumer Debt arose from Plaintiff's work-related accident and injuries.

24.     Care Provider knew that payment of the Consumer Debt was the responsibility of Plaintiff's employer and/or the insurance carrier of Plaintiff's employer.

25.     Care Provider knew that payment of the Consumer Debt was not Plaintiff's responsibility.

26.     Care Provider knew that Plaintiff was not the debtor of this Consumer Debt, because he never owed any sum of money to Care Provider.

27.     On February 12, 2019, Plaintiff filed a Petition for Workers' Compensation Benefits with the Office of the Judges of Compensation Claims, of which, among other things, (1) provides public notice that Plaintiff sustained a workplace injury on January 26, 2019, and (2) that either Plaintiff's employer or the employer's worker compensation insurance carrier are responsible for medical treatment rendered to Plaintiff for the treatment of the Work-Injury.

28.     Care Provider knew that it did not have any statutory or contractual right to attempt to collect the Consumer Debt from Plaintiff. Despite knowing this, Care Provider began attempting to collect the Consumer Debt from Plaintiff. Thereafter, and despite knowing that it did not have any statutory or contractual right

to attempt to collect the Consumer Debt from Plaintiff, Care Provider hired ARS to attempt to collect the Consumer Debt from Plaintiff.

### *FLORIDA STATUTES § 440.13 AND § 559.72(9)*

29.   Pursuant to Fla. Stat. § 440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…."

30.   Pursuant to Fla. Stat. § 440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employee or carrier for payment for services rendered in accordance with this chapter."

31.   An employee is shielded from liability in any dispute between the employer or carrier and health care provider regarding reimbursement for the employee's medical or psychological treatment. *See* generally Fla. Stat. § 440.13.

32.   Pursuant to § 559.72(9) of the FCCPA, in collecting consumer debts, no person shall: *"[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."* Fla Stat. § 559.72(9) (emphasis added).

33.   The aforementioned is well settled Florida Law.

34.     Defendant Experian Information Solutions, Inc., Defendant Equifax Information Services LLC, Defendant Trans Union LLC, and Defendant Ability Recovery Services LLC are aware of Fla. Stat. § 440.13 and Fla. Stat. § 559.72(9).

35.     In light of their awareness of Fla. Stat. § 440.13 and § 559.72(9) of the FCCPA, Defendant Experian Information Solutions, Inc., Defendant Equifax Information Services LLC, and Defendant Trans Union LLC were aware that Plaintiff was not the correct debtor of the Subject Accounts.

### ***ARS***

36.     On a date better known by ARS, ARS began attempting to collect the Consumer Debt from Plaintiff.

37.     ARS is a business entity engaged in the business of soliciting consumer debts for collection.

38.     ARS is a business entity engaged in the business of collecting consumer debts.

39.     ARS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

40.     ARS is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

41.     ARS's "Consumer Collection Agency" license number is CCA9902892.

42.     ARS maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

43.     The records specified by Rule 69V-180.080, Florida Administrative Code, of which ARS does maintain, are current to within one week of the current date.

44.     For ARS's "Consumer Collection Agency" license to remain valid, ARS is required to maintain, *at minimum*, all records specified in Rule 69V-180.080, Florida Administrative Code, and keep such records current within one week of the current date.

45.     Rule 69V-180.080(3)(e) of the Florida Administrative Code commands that ARS *shall* maintain: "[t]he debtor's account of activity disclosing… a record of payments made by the debtor, including the date received and the amount and balance owing."

46.     Rule 69V-180.080(9)(a)-(b) of the Florida Administrative Code commands that ARS *shall* maintain: "basic information about the debt including, at minimum… [d]ocumentation of the debt provided by the creditor," as well as "[t]he date the debt was incurred and the date of the last payment."

47.     On a date better known by Defendants, ARS reported debts allegedly owed to Care Provider by Plaintiff to the national credit reporting agencies.

48.     ARS falsely represented that Plaintiff was indebted to Care Provider, as well as falsely represented that Plaintiff was financially responsible for the repayment of the Consumer Debt.

49.     The Subject Accounts, as reported on Plaintiff's credit reports, are erroneous, incomplete, misleading, inaccurate, and, as such, require correction. In particular, among other issues, the Subject Accounts are erroneous because the accounts incorrectly name Plaintiff as the debtor as such, to achieve the necessary correction, Plaintiff disputed the Subject Accounts with the national credit bureaus.

50.     The Subject Accounts as reported on Plaintiff's credit reports, are erroneous, incomplete, incorrect, inaccurate, and, as such, require correction. As such, to achieve the necessary correction, Plaintiff disputed the Subject Accounts with the national credit bureaus.

### *EXPERIAN*

51.     Experian is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau."

52.     Experian regularly obtains and analyzes financial information about consumers and compiles the information into "credit reports," which it provides to third parties.

53.     Experian is a "consumer reporting agency" as defined by § 1681a(f) of the FCRA and compiles the information into "credit reports," which it provides to third parties.

54.     On July 14, 2023, Plaintiff sent Experian a written dispute regarding the Subject Accounts (the "First Experian Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023 is inaccurate, this debt does not belong to me. This debt is for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying this debt. I am not the correct debtor of this account."

55.     Despite receiving Plaintiff's First Experian Dispute, Experian failed to conduct any investigation into the accuracy of Plaintiff's credit report.

56.     Despite receiving Plaintiff's First Experian Dispute, Experian continues to report the Subject Accounts inaccurately.

57.     On or about September 6, 2023, Plaintiff sent Experian a second written dispute regarding the Subject Accounts (the "Second Experian Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023 is inaccurate, this debt does not belong to me. This debt is for the treatment of a workplace injury I sustained. I opened a case with the Office of the

Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC

Case Number is 19-003641JAW. My employer is responsible for paying this debt. I

am not the correct debtor of this account."

58.     Despite receiving Plaintiff's Second Experian Dispute, Experian failed

to conduct any investigation into the accuracy of Plaintiff's credit report.

59.     Despite receiving Plaintiff's Second Experian Dispute, Experian

continues to report the Subject Accounts inaccurately.

60.     On or about October 17, 2023, Plaintiff sent Experian a third written

dispute regarding the Subject Accounts (the "Third Experian Dispute"), whereby

Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened

on 01-05-2023 is inaccurate, this debt does not belong to me. This debt is for the

treatment of a workplace injury I sustained. I opened a case with the Office of the

Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC

Case Number is 19-003641JAW. My employer is responsible for paying this debt. I

am not the correct debtor of this account."

61.     Despite receiving Plaintiff's Third Experian Dispute, Experian failed to

conduct any investigation into the accuracy of Plaintiff's credit report.

62.     Despite receiving Plaintiff's Third Experian dispute, Experian

continues to report the Subject Accounts inaccurately.

63.     Continuing to report Plaintiff's accounts inaccurately is significant. By continuing to report Plaintiff's account inaccurately and/other erroneously, lenders believe Plaintiff has had a recent, major delinquency negatively reflecting on the consumer's credit worthiness by impacting their credit score negatively.

64.     Credit scoring algorithms take Plaintiff's account status into consideration when generating a credit score and showing this incorrect account status would cause a lower credit score to be generated.

65.     Experian failed to conduct a reasonable investigation.

66.     Experian is aware of Plaintiff's rights under Fla. Stat. § 440.13.

67.     Experian is aware of Plaintiff's rights under § 559.72(9) of the FCCPA.

68.     Experian was aware that Plaintiff had a Case with the Office of the Judges of Compensation Claims ("OJCC").

69.     Experian received Plaintiff's OJCC case number three times.

70.     Experian failed to review and consider all relevant information submitted by Plaintiff.

71.     Experian failed to verify the Subject Accounts as being reported accurately.

72.     Experian failed to conduct an independent investigation and, instead, deferred to the underlying furnisher despite the information Plaintiff provided to it (Experian).

73.   Experian possessed evidence that the information was inaccurate, incorrect and misleading as described by Plaintiff in Plaintiff's disputes; however, Experian failed to correct the information.

74.   Experian possessed evidence that the information was inaccurate, incorrect and misleading as described by Plaintiff in Plaintiff's disputes; however, Experian failed to verify the information as accurate.

75.   Experian's reporting of inaccurate information in connection with the Subject Accounts, despite evidence that said information is inaccurate and incorrect, evidence Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and file.

76.   Experian did not conduct any independent investigation after it (Experian) received Plaintiff's disputes and, instead, choose to parrot the information it (Experian) received from the underlying furnisher despite being in possession of evidence that the information was inaccurate.

77.   Without any explanation or reason, Experian continues to report this false, misleading, inaccurate, incorrect or otherwise incomplete information, about Plaintiff.

78.   Plaintiff has suffered damages as a result of the incorrect reporting and Experian's failure to correct the credit report pertaining to Plaintiff.

### _EQUIFAX_

79.     Equifax is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau."

80.     Equifax regularly obtains and analyzes financial information about consumers and compiles the information into "credit reports," which it provides to third parties.

81.     Equifax is a "consumer reporting agency" as defined by § 1681a(f) of the FCRA and compiles the information into "credit reports," which it provides to third parties.

82.     On July 14, 2023, Plaintiff sent Equifax a written dispute regarding the Subject Accounts (the "First Equifax Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not belong to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts.

83.     Despite receiving Plaintiff's First Equifax Dispute, Equifax failed to conduct any investigation into the accuracy of Plaintiff's credit report.

84.     Despite receiving Plaintiff's First Equifax dispute, Equifax continues to report the Subject Accounts inaccurately.

85.     On September 6, 2023, Plaintiff sent Equifax a written dispute regarding the Subject Accounts (the "Second Equifax Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not belong to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts.

86.     Despite receiving Plaintiff's Second Equifax Dispute, Equifax failed to conduct any investigation into the accuracy of Plaintiff's credit report.

87.     Despite receiving Plaintiff's Second Equifax Dispute, Equifax continues to report the Subject Accounts inaccurately.

88.     On October 17, 2023, Plaintiff sent Equifax a written dispute regarding the Subject Accounts (the "Third Equifax Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not belong

to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts."

89.     Despite receiving Plaintiff's Second Equifax Dispute, Equifax failed to conduct any investigation into the accuracy of Plaintiff's credit report.

90.     Despite receiving Plaintiff's Second Equifax dispute, Equifax continues to report the Subject Accounts inaccurately.

91.     Continuing to report Plaintiff's accounts inaccurately is significant. By continuing to report Plaintiff's accounts inaccurately and/or erroneously, lenders believe Plaintiff has had a recent, major delinquency negatively reflecting on the consumer's credit worthiness by impacting their credit score negatively.

92.     Credit scoring algorithms take Plaintiff's account status into consideration when generating a credit score and showing this incorrect account status would cause a lower credit score to be generated.

93.     Equifax is aware of Plaintiff's rights under Fla. Stat. § 440.13.

94.     Equifax is aware of Plaintiff's rights under § 559.72(9) of the FCCPA.

95.     Equifax was aware that Plaintiff had a Case with the Office of the Judges of Compensation Claims ("OJCC").

96.     Equifax received Plaintiff's OJCC case number three times.

97.   Equifax failed to review and consider all relevant information submitted by Plaintiff.

98.   Equifax failed to verify the Subject Accounts as being reported accurately.

99.   Equifax possessed evidence that the information was inaccurate as described by Plaintiff in Plaintiff's dispute; however, Equifax failed to correct the information.

100.   Equifax possessed evidence that the information was inaccurate and misleading as described by Plaintiff in Plaintiff's disputes; however, Equifax failed to verify the information as accurate.

101.   Equifax's reporting of inaccurate information in connection with the Subject Accounts, despite evidence that said information is inaccurate, evidence Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and file.

102.   Equifax failed to conduct an independent investigation and, instead, deferred to the underlying furnisher despite the information Plaintiff provided to it (Equifax).

103.   Equifax did not conduct any independent investigation after it (Equifax) received Plaintiff's disputes and, instead, chose to parrot the information

it (Equifax) received from the underlying furnisher despite being in possession of evidence that the information was inaccurate.

104.    Without any explanation or reason, Equifax continues to report this false, inaccurate, incorrect or otherwise incomplete information, about Plaintiff.

105.    Plaintiff has suffered damages as a result of the incorrect reporting and Equifax's failure to correct the credit report pertaining to Plaintiff.

## ***TRANS UNION***

106.    TransUnion is engaged in the business of credit reporting and is commonly referred to as a "Credit Bureau."

107.    TransUnion regularly obtains and analyzes financial information about consumers and compiles the information into "credit reports," which it provides to third parties.

108.    TransUnion is a "consumer reporting agency" as defined by § 1681a(f) of the FCRA and compiles the information into "credit reports," which it provides to third parties.

109.    On or about July 14, 2023, Plaintiff sent Trans Union a written dispute regarding the Subject Accounts (the "First TransUnion Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not

belong to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts."

110.   Despite receiving Plaintiff's First TransUnion Dispute, TransUnion failed to conduct any investigation into the accuracy of Plaintiff's credit report.

111.   Despite receiving Plaintiff's First TransUnion Dispute, TransUnion continues to report the Subject Accounts inaccurately.

112.   On or about September 6, 2023, Plaintiff sent Trans Union a written dispute regarding the Subject Accounts (the "Second TransUnion Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not belong to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts."

113.   Despite receiving Plaintiff's Second TransUnion Dispute, TransUnion failed to conduct any investigation into the accuracy of Plaintiff's credit report.

114. Despite receiving Plaintiff's Second TransUnion Dispute, TransUnion continues to report the Subject Accounts inaccurately.

115. On or about October 16, 2023, Plaintiff sent Trans Union a written dispute regarding the Subject Accounts (the "Third TransUnion Dispute"), whereby Plaintiff stated, in relevant part, that, "The Ability Recovery Servi account opened on 01-05-2023, the Applied Business Service, Inc account opened on 03-01-2022 and the Credit Collection account opened on 06-20-2022 are inaccurate, these debts do not belong to me. These debts are for the treatment of a workplace injury I sustained. I opened a case with the Office of the Judges of Compensation Claims concerning this injury on 02-12-2019. My OJCC Case Number is 19-003641JAW. My employer is responsible for paying these debts. I am not the correct debtor of these accounts."

116. Despite receiving Plaintiff's Third TransUnion Dispute, TransUnion failed to conduct any investigation into the accuracy of Plaintiff's credit report.

117. Despite receiving Plaintiff's Third TransUnion Dispute, TransUnion continues to report the Subject Accounts inaccurately.

118. Continuing to report Plaintiff's accounts inaccurately is significant. By continuing to report Plaintiff's account inaccurately and/other erroneously, lenders believe Plaintiff has had a recent, major delinquency negatively reflecting on the consumer's credit worthiness by impacting their credit score negatively.

119. Credit scoring algorithms take Plaintiff's account status into consideration when generating a credit score and showing this incorrect account status would cause a lower credit score to be generated.

120. TransUnion is aware of Plaintiff's rights under Fla. Stat. § 440.13.

121. TransUnion is aware of Plaintiff's rights under § 559.72(9) of the FCCPA.

122. TransUnion was aware that Plaintiff had a Case with the Office of the Judges of Compensation Claims ("OJCC").

123. TransUnion received Plaintiff's OJCC case number three times.

124. TransUnion failed to conduct a reasonable investigation.

125. TransUnion failed to verify the Subject Accounts as being reported accurately.

126. TransUnion failed to review and consider all relevant information submitted by Plaintiff.

127. TransUnion failed to conduct an independent investigation and, instead, deferred to the underlying furnisher despite the information Plaintiff provided to it (TransUnion).

128. TransUnion possessed evidence that the information was inaccurate as described by Plaintiff in Plaintiff's dispute; however, TransUnion failed to correct the information.

129.   TransUnion possessed evidence that the information was inaccurate misleading, and incorrect as described by Plaintiff in Plaintiff's disputes; however, TransUnion failed to verify the information as accurate.

130.   TransUnion's reporting of inaccurate information in connection with the Subject Accounts, despite evidence that said information is inaccurate, evidence TransUnion's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and file.

131.   TransUnion did not conduct any independent investigation after it (TransUnion) received Plaintiff's disputes and, instead, chose to parrot the information it (TransUnion) received from the underlying furnisher despite being in possession of evidence that the information was inaccurate.

132.   Without any explanation or reason, TransUnion continues to report this false, inaccurate, misleading or otherwise incomplete information, about Plaintiff.

133.   Plaintiff has suffered damages as a result of the incorrect reporting and TransUnion's failure to correct the credit report pertaining to Plaintiff.

## Count 1
## <u>WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT</u>
### (against Experian)

134.   Plaintiff incorporates by reference ¶¶ 9-78 of this Complaint.

135.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681e(b) by failing to establish or

follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

136.   Experian failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the information contained in Plaintiff's Experian credit report.

137.   Experian's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

138.   Experian has willfully and recklessly failed to comply with the FCRA. The failures of Experian to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which Experian had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being advised by Plaintiff that the information was inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to

promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Experian to delete; and [h] the failure to take adequate steps to verify information Experian had reason to believe was inaccurate before including it in the credit report of the consumer.

139.   The conduct, action and inaction of Experian was willful, thereby rendering Experian liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

140.   Plaintiff is entitled to recover reasonable costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

141.   The appearance of the accounts on Plaintiff's credit report, namely, those accounts identified by Plaintiff in Plaintiff's dispute to Experian, was the direct and proximate result of Experian's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of the 15 U.S.C. § 1681e(b).

142.   As a result of the conduct, action, and inaction, of Experian, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

143.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Experian, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); [3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Plaintiff which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems appropriate under the circumstances.

**Count 2**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(against Experian)**

144.   Plaintiff incorporates by reference ¶¶ 9-78 of this Complaint.

145.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed information.

146.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

147.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(5) by failing to delete the inaccurate information.

148.   Additionally, Experian negligently failed to report accounts identified by Plaintiff as "disputed" in violation of 15 U.S.C. § 168li(c).

149.   Experian has negligently failed to comply with the FCRA. The failures of Experian to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which Experian had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being advised by Plaintiff that the information was inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Experian to delete; and [h] the failure to take adequate steps to verify information Experian had reason to believe was inaccurate before including it in the credit report of the consumer.

150.   The conduct, action, and inaction, of Equifax was negligent, thereby rendering Experian liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

151.   Plaintiff is entitled to recover reasonable costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

152.   As a result of the conduct, action and inaction of Experian, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

153.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Experian, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

**Count 3**
**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(against Equifax)**

154.   Plaintiff incorporates by reference ¶¶ 9-50 and 79-105 of this Complaint.

155.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

156.   Equifax failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the information contained in Plaintiff's Equifax credit report.

157.   Equifax's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

158.   Equifax has willfully and recklessly failed to comply with the FCRA. The failures of Equifax to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which Equifax had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being

advised by Plaintiff that the information was inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Equifax to delete; and [h] the failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

159.   The conduct, action and inaction of Equifax was willful, thereby rendering Equifax liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

160.   Plaintiff is entitled to recover reasonable costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

161.   The appearance of the accounts on Plaintiff's credit report, namely, those accounts identified by Plaintiff in Plaintiff's dispute to Equifax, was the direct and proximate result of Equifax's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of the 15 U.S.C. § 1681e(b).

162.   As a result of the conduct, action, and inaction, of Equifax, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

163.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Equifax, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); [3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Plaintiff which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems appropriate under the circumstances.

### Count 4
### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (against Equifax)

164.   Plaintiff incorporates by reference ¶¶ 9-50 and 79-105 of this Complaint.

165.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed information.

166.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

167.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to delete the inaccurate information.

168.   Additionally, Equifax negligently failed to report accounts identified by Plaintiff as "disputed" in violation of 15 U.S.C. § 168li(c).

169.   Equifax has negligently failed to comply with the FCRA. The failures of Equifax to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which Equifax had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being advised by Plaintiff that the information was inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Equifax to delete; and [h] the failure to take adequate steps to verify information Equifax had reason to believe was inaccurate before including it in the credit report of the consumer.

170.    The conduct, action, and inaction, of Equifax was negligent, thereby rendering Equifax liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

171.    Plaintiff is entitled to recover reasonable costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

172.    As a result of the conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

173.    WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Equifax, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

### Count 5
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
#### (against Trans Union)

174.    Plaintiff incorporates by reference ¶¶   9-50 and 106-133 of this Complaint.

175.    On at least one occasion within the past two years, by example only and without limitation, TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish

or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

176.   TransUnion failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the information contained in Plaintiff's TransUnion credit report.

177.   TransUnion's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

178.   TransUnion has willfully and recklessly failed to comply with the FCRA. The failures of TransUnion to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which TransUnion had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being advised by Plaintiff that the information was

inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised TransUnion to delete; and [h] the failure to take adequate steps to verify information TransUnion had reason to believe was inaccurate before including it in the credit report of the consumer.

179.   The conduct, action and inaction of TransUnion was willful, thereby rendering TransUnion liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

180.   Plaintiff is entitled to recover reasonable costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

181.   The appearance of the accounts on Plaintiff's credit report, namely, those accounts identified by Plaintiff in Plaintiff's dispute to TransUnion, was the direct and proximate result of TransUnion's willful failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of the 15 U.S.C. § 1681e(b).

182.   As a result of the conduct, action, and inaction, of TransUnion, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit,

emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

183.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against TransUnion, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1640(a)(1); [2] statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A); [3] statutory damages pursuant to 15 U.S.C. § 1640(a)(2); [4] after reasonable showing by evidence in the record or proffered by Plaintiff which would provide a reasonable basis for recovery of such, punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); [5] costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(3) and 1681n(a)(3); and [6] any other relief that this Court deems appropriate under the circumstances.

**Count 6**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(against Trans Union)**

184.   Plaintiff incorporates by reference ¶¶   9-50 and 106-133 of this Complaint.

185.   On at least one occasion within the past two years, by example only and without limitation, TransUnion violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed information.

186.   On at least one occasion within the past two years, by example only and without limitation, TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review

and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

187.   On at least one occasion within the past two years, by example only and without limitation, TransUnion violated 15 U.S.C. § 1681i(a)(5) by failing to delete the inaccurate information.

188.   Additionally, TransUnion negligently failed to report accounts identified by Plaintiff as "disputed" in violation of 15 U.S.C. § 168li(c).

189.   TransUnion has negligently failed to comply with the FCRA. The failures of TransUnion to comply with the FCRA include, but are not limited to, the following: [a] the failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported; [b] the failure to correct erroneous personal information regarding Plaintiff after a reasonable request by Plaintiff; [c] the failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by Plaintiff; [d] the failure to promptly and adequately investigate information which TransUnion had notice was inaccurate; [e] the continual placement of inaccurate information into the credit report of Plaintiff after being advised by Plaintiff that the information was inaccurate; [f] the failure to note in the credit report that Plaintiff disputed the accuracy of the information; [g] the failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised TransUnion to delete; and

[h] the failure to take adequate steps to verify information TransUnion had reason to believe was inaccurate before including it in the credit report of the consumer.

190.   The conduct, action, and inaction, of TransUnion was negligent, thereby rendering TransUnion liable for actual, statutory, and punitive damages, in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681(n).

191.   Plaintiff is entitled to recover reasonable costs and attorneys' fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

192.   As a result of the conduct, action and inaction of TransUnion, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, emotional distress, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

193.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against TransUnion, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

**Count 7**
**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(against ARS)**

194.   Plaintiff incorporates by reference ¶¶ 9-50 of this Complaint.

195.    On at least one occasion within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the disputed information.

196.    On at least one occasion within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

197.    On at least one occasion within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to delete the inaccurate information.

198.    Upon information and belief, Discover Bank was aware of the FCRA obligations to reasonably investigate disputes when it received notice of Plaintiff's disputes.

199.    When Discover Bank received notice of Plaintiff's dispute from Experian, Discover Bank could and should have reviewed its own systems and previous communications with the Plaintiff as part of its investigation.

200.    Discover Bank would have discovered that the information it was reporting about Plaintiff was inaccurate if Discover Bank had reviewed its own systems and previous communications with the Plaintiff.

201.    Discover Bank's investigation was per se deficient by reason of these failures on Discover Bank's investigation of Plaintiff's dispute.

202.   As a direct and proximate result of 's violations of § 1681s-2(b), Plaintiff suffered actual damages, including but not limited to: (i) money lost attempting to fix Plaintiff's credit; (ii) denial of financing for loans (iii) loss of time attempting to cure the errors in Plaintiff's credit; (iv) mental anguish, added stress, aggravation, embarrassment, and other related impairments to the enjoyment of life such as headaches, irritability, anxiety and loss of sleep; (v) reduction in credit score; and (vi) apprehensiveness to apply for credit due to fear of rejection.

203.   Discover Bank's actions in violation of 15 U.S.C. § 1681s-2(b), were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

204.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Discover Bank, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

**Count 7**
**<u>NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT</u>**
**(against ARS)**

205.   Plaintiff incorporates by reference ¶¶ 9-50 of this Complaint.

206.   On at least one occasion within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the disputed information.

207.   On one or more occasions within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

208.   On one or more occasions within the past two years, by example only and without limitation, Discover Bank violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to delete the inaccurate information.

209.   When Discover Bank received notice of Plaintiff's dispute from Experian, Discover Bank could and should have reviewed its own systems and previous communications with the Plaintiff as part of its investigation.

210.   Discover Bank would have discovered that the information it was reporting about the Plaintiff was inaccurate if had reviewed its own systems and previous communications with the Plaintiff.

211.   Discover Bank's investigation was per se deficient by reason of these failures on 's investigation of Plaintiff's dispute.

212.   As a direct and proximate result of Discover Bank's violations of § 1681s-2(b), Plaintiff suffered actual damages, including but not limited to: (i) money

lost attempting to fix Plaintiff's credit; (ii) denial of financing for home loans (iii) loss of time attempting to cure the errors in Plaintiff's credit; (iv) mental anguish, added stress, aggravation, embarrassment, and other related impairments to the enjoyment of life such as headaches, irritability, anxiety and loss of sleep; (v) reduction in credit score; and (vi) apprehensiveness to apply for credit due to fear of rejection.

213.   Discover Bank's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. §1681o.

214.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against, awarding Plaintiff the following relief: [1] actual damages pursuant to 15 U.S.C. § 1681o(a)(1); [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and [3] any other relief that this Court deems appropriate under the circumstances.

**Count 8**
**VIOLATION OF 15 U.S.C. § 1692e(2)(A)**
**(against ARS)**

215.   Plaintiff incorporates by reference ¶¶ 9-50 of this Complaint.

216.   Pursuant to Fla. Stat. § 440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…."

217.   Pursuant to Fla. Stat. § 440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employee or carrier for payment for services rendered in accordance with this chapter."

218.   An employee is shielded from liability in any dispute between the employer or carrier and health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *See* generally Fla. Stat. § 440.13.

219.   Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). (emphasis added).

220.   As stated above, ARS falsely represented the Consumer Debt as Plaintiff's personal financial obligation, as well as falsely represented that Plaintiff was indebted to Care Provider by reporting the Consumer Debt to Trans Union, Equifax, and Experian.

221.   ARS by and through the erroneous and otherwise false reporting to Trans Union, Equifax, and Experian, falsely represents the character of the Consumer Debt, in that, the Collection Letter falsely represents Consumer Debt as a debt which Plaintiff is solely responsible and/or otherwise obligated to pay.

222.   Further, by and through the erroneous and otherwise false reporting to Trans Union, Equifax, and Experian, ARS falsely represents the character of the Consumer Debt, in that, the debt reported by ARS mistakenly states that Plaintiff is the debtor.

223.   Thus, by and through the erroneous and otherwise false reporting to Trans Union, Equifax, and Experian, ARS violated § 1692e(2)(A) of the FDCPA by falsely representing the character of the Consumer Debt, as well as by falsely representing the amount of the Consumer Debt.

224.   WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against ARS, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

[REMAINDER OF PAGE LEFT BLANK]

DATED: June 24, 2024

Respectfully Submitted,

 /s/ Thomas Patti                                    .
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:   Tom@pzlg.legal
**BRYON YOUNG, ESQ.**
Florida Bar No. 1052949
E-mail:   Bryon@pzlg.legal
PATTI ZABALETA LAW GROUP
3323 Northwest 55th Street
Fort Lauderdale, Florida 33309
Phone:    561-542-8550

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti                    
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377